[S. F. No. 7242. Department One.—February 28, 1916.]

In the Matter of the Estate of FRANCIS CUTTING, Deceased; ALICE M. CUTTING, Appellant; FREDERICK P. CUTTING et al., as Executors, etc., Respondents.

WILLS—ANTENUPTIAL WILL MAY BE REPUBLISHED BY POSTNUPTIAL CODICIL.—An antenuptial will may be republished by a codicil executed by the testator after marriage, although but for the codicil it would have been revoked by the subsequent marriage under section 1299 of the Civil Code.

ID. — POSTNUPTIAL WILL — REPUBLICATION OF PRENUPTIAL WILL. — The husband may make a postnuptial will providing for the wife either by a will made originally after marriage or by the republication of an antenuptial will as modified by the codicil.

ID.—ANTENUPTIAL WILL REPUBLISHED BY POSTNUPTIAL CODICIL—ENTIRE INSTRUMENT SPEAKS AS OF DATE OF CODICIL.—The antenuptial will republished by the postnuptial codicil stands as one testamentary act expressed in a single will at the date of the codicil.

ID.—POSTNUPTIAL CODICIL—CONSTRUCTION.—The entire instrument alleged to be a codicil must be considered in its entirety in order to determine whether in fact it be a codicil.

ID.—REPUBLICATION OF PRENUPTIAL WILL.—Where the testator uses the language, "hereby confirming my will bearing date Oct. 22nd, 1912, except as herein modified, do hereby declare the following as and to be a codicil to my said will being my last will and testament," the whole document is a codicil to the will referred to, and has the effect of republishing it as of the date of the codicil.

ID.—CODICIL DISPOSITIVE IN CHARACTER.—Where the testator in an antenuptial agreement promised that he would cause to be paid $250

per month to the woman he intended to marry if they married and she survived him, and in the postnuptial codicil to his antenuptial will directed his executors to provide "from the remainder" of his estate an annual income of three thousand dollars, payable monthly as long as she lives in accordance with the antenuptial agreement, the codicil is a testamentary disposition of property.

APPEAL from a judgment of the Superior Court of Alameda County. Wm. S. Wells, Judge.

The facts are stated in the opinion of the court.

A. J. Treat, L. Horwitz, and Henry Conlin, for Appellant.

Warren Gregory, Allen L. Chickering, and William H. Gorrill, for Respondents.

LAWLOR, J.—The petitioner, as the widow of the decedent, appeals from a judgment entered upon an order sustaining the two demurrers of the respondents to the petition, in which she asserts that within the meaning of section 1299 of the Civil Code, the will of the decedent, dated October 22, 1912, was revoked, and that, therefore, he died intestate. The respondents are the below mentioned executors and the Pacific Unitarian School for the Ministry at Berkeley, California, a legatee under the said will.

Stated in chronological order, the record on appeal discloses that on October 22, 1912, the decedent, Francis Cutting, executed a holographic will wherein he named his son, Frederick Page Cutting, William H. Chickering, and Alfred D. Cutler, as his executors; that on April 19, 1913, the testator and petitioner executed an "antenuptial agreement"; that on May 10, 1913, they were married; that on July 18, 1913, the testator executed a holographic codicil to his said will; that on October 1, 1913, the testator died, without making any further testamentary disposition of his property; and that there was no issue of said marriage. The will of October 22, 1912, was the only antenuptial will left by the testator and the petitioner was not mentioned nor referred to therein. At the date of the execution of the said will the testator was a widower and the father of two adult children—the said son, Frederick Page Cutting, and a daughter, Isabella S. Cutting, both of whom survived him.

The will and codicil were admitted to probate on October 20, 1913, and letters testamentary were issued to the said executors. On June 24, 1914, petitioner filed her petition for revocation of the probate of the will and codicil. The petition prays that the court decree that the testator died intestate; that the letters testamentary issued to the said executors be revoked and set aside; and that letters of administration be issued to petitioner, as the widow of the testator. The said demurrers to the petition followed and on September 16, 1914, were sustained without leave to amend. Judgment was entered in favor of the respondents on September 28, 1914.

The codicil of July 18, 1913, and the antenuptial agreement of April 19, 1913, heretofore referred to, are here set out in full:

> "Oakland, California.
> July 18, 1913.

"I, Francis Cutting, hereby affirming my will bearing date Oct. 22nd, 1912, except as herein modified, do hereby declare the following as and to be a codicil to my said will being my last will and testament. After paragraphs numbered 2, 3, 4, having reference to devises benefiting my daughter, also Miss Paterson, also my son Frederick P. Cutting, I direct that my executors provide from the remainder of my estate an income for my wife Alice M. Cutting and pay the same to her monthly of two hundred and fifty ($250) dollars per month as long as she lives, in accordance with an antenuptial agreement with my said wife and myself of April . . . , 1913.

> "(Signed)   FRANCIS CUTTING."

"Ante Nuptial Agreement between Francis Cutting and Alice M. Duren."

"The undersigned, in contemplation of marriage hereby agree that in consideration thereof Francis Cutting will give Alice M. Duren proper support during their married life and should said Francis Cutting die before said Alice M. Duren after their marriage he will cause her to be paid two hundred and fifty ($250) dollars per month during her life which said Alice M. Duren agrees shall be in lieu of any and all claims against the property or estate of said Francis Cutting whether community or any other property or interest

of said Francis Cutting and will marry said Cutting at any convenient time requested by said Cutting who also agrees to pay said Alice M. Duren one hundred dollars per month during the time that may elapse prior to marriage and continue during her life should he die before their marriage.

"In witness whereof we have set our hands this nineteenth day of April, 1913.

"(Signed)    ALICE M. DUREN.

"FRANCIS CUTTING."

1. As already stated, the appellant contends that the will of October 22, 1912, was revoked on the death of the testator, by virtue of section 1299 of the Civil Code, which reads: "If, after making a will, the testator marries, and the wife survives the testator, the will is revoked, unless provision has been made for her by marriage contract, or unless she is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation must be received."

We do not find it necessary to construe the clause in section 1299 relating to a marriage contract. Excluding that clause, the section contemplates these conditions: (1) An antenuptial will; (2) A subsequent marriage; (3) The death of the testator; (4) The survival of the wife; and (5) Either provision for the wife in the antenuptial will, or a mention of her therein in such way as to show an intention not to make such provision. We have here an antenuptial will which neither provided for the petitioner nor mentioned her in such way as to show an intention not to provide for her; a subsequent marriage between the testator and the petitioner; his death and her survival. It is plain from its terms that section 1299 has application only to an antenuptial will, and does not contemplate wills made after marriage. Therefore, if the antenuptial will of October 22, 1912, stood alone, it would have been revoked upon the death of the husband according to the provisions of the section. (*Sanders* v. *Simcich,* 65 Cal. 50, [2 Pac. 741] ; *Corker* v. *Corker,* 87 Cal. 643, [25 Pac. 922] ; *In re Larsen's Estate,* 18 S. D. 335, [5 Ann. Cas. 794, 100 N. W. 738].)

2. But the antenuptial will was republished by the codicil of July 18, 1913, in accordance with section 1287 of the Civil Code, and hence the will was taken out of the operation of

section 1299. Section 1287 declares: "The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil." The appellant contends, however, that the said will was not republished for these reasons—first, that under section 1299, an antenuptial will cannot be republished at all, but that an entirely new will must be made after marriage, and, second, that even if it can be republished by a postnuptial codicil, the instrument of July 18, 1913, was not a codicil.

Was it necessary to the republication of the will of October 22, 1913, that the testator should have made an entirely new will following the marriage? Upon this question the position of petitioner is that on the death of the testator the antenuptial will was *ipso facto* revoked. It is not claimed by petitioner that the antenuptial will, in and of itself, was invalid, or that it was revoked by the marriage alone. "On the contrary," it is admitted, "if the wife did not survive the testator, the will not only was not revoked, but it was of full force and effect." But it is further contended that from the date of the marriage the will was liable to revocation, that when death came to the testator the will was thereby revoked, and having ceased to be a will it could not be revived or republished even by an otherwise valid postnuptial codicil. Discussing the meaning of section 1299, it is urged by petitioner that "if a testator desires to dispose of his property by will after marriage, he must make an entirely new will, which cannot embody by reference, or otherwise, a will made before marriage." In other words, if the antenuptial will is invalid under section 1299, then it is invalid for every purpose so far as the testamentary claims of the widow are concerned.

This contention cannot be supported. If the antenuptial will does not conform to section 1299, then as to that section such will is without force. But the husband may nevertheless make a postnuptial will providing for the wife, either by a will made originally after marriage, or, as here, by the republication of an antenuptial will as modified by a codicil. It does not follow that because an antenuptial will, standing alone, is rendered invalid by virtue of section 1299, it may not have testamentary force in the making of a postnuptial will. The postnuptial will—the antenuptial will as modified by the codicil—stands as if it were but one testamentary in-

tention expressed in a single will made after marriage as of the date of the codicil. "The codicil refers to the will, and operates as its republication, and the two are to be regarded as forming but one instrument, speaking from the date of the codicil." (*Payne* v. *Payne,* 18 Cal. 292; see, also, *In re Ladd's Estate,* 94 Cal. 670, [30 Pac. 99] ; *Estate of McCauley,* 138 Cal. 432, [71 Pac. 512] ; *Estate of Hayne,* 165 Cal. 568, [Ann. Cas. 1915A, 926, 133 Pac. 277].)

It is clear, therefore, that if the testator had not continued the antenuptial will in force by the postnuptial codicil, it would have stood revoked on the death of the testator. But by virtue of the postnuptial codicil the antenuptial will was republished and became a postnuptial will from the date of the codicil. There is nothing in section 1299 which precludes the republication of an antenuptial will in accordance with section 1287 of the Civil Code, nor is it to be held that under the latter section an antenuptial will may not, in contemplation of section 1299, be republished and become a part of a postnuptial will.

By reference, the testator republished the former will. Language more expressive of the purpose could hardly have been chosen. The testator said, "I . . . hereby affirming my will bearing date Oct. 22nd, 1912, except as herein modified, do hereby declare the following as and to be a codicil to my said will being my last will and testament." The terms of the codicil plainly indicate that the requirements of section 1287 have been studiously followed by the testator in order to make testamentary provision for petitioner in accordance with the antenuptial promise. And by affirming the will except "as herein modified" and declaring "the following as and to be a codicil to my said will" the antenuptial will does not come within the purview of section 1299.

3. The objections to the codicil are two-fold—first, that it lacks in testamentary form, and second, that apart from the question of its form, the instrument is, in substance, not a codicil.

The first point that the codicil is lacking in form is thus expressed in the brief for the petitioner: "It will be observed that the decedent has himself declared what portion of it is to be regarded as a codicil, for he does not declare it in its entirety to be a codicil, but limits his testamentary intention to that part beginning 'after paragraphs,' etc. The testator

declares *'the following* as and to be a codicil.' . . . The two distinct parts of the attempted codicil must be kept in view. The testator first uses the word 'affirming,' and then declares the 'following to be a codicil to my said will, being my last will and testament.' The second part of the attempted codicil is that which he declares shall be his codicil, nothing more." It is further declared that section 1287 of the Civil Code "calls for more than a codicil to republish the will. The codicil must refer to the previous will. That part of the writing declared by the testator to be the codicil does not refer to the previous will at all." It is sufficient to say on this point that the entire instrument must be read and construed together and, thus considered, the declaration that the instrument is a codicil refers to its entirety and affirms the will as modified by the provision for the petitioner. "All the parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; . . . " (Civ. Code, sec. 1321). The point made by the petitioner is therefore without merit. (See *Payne* v. *Payne,* 18 Cal. 292; *Estate of McCauley,* 138 Cal. 432, [71 Pac. 512]; *In re Ladd's Estate,* 94 Cal. 670, [30 Pac. 99].)

4. We will now consider the objections to the substance of the codicil. It is asserted in this behalf that the codicil is neither a will nor a codicil to a will in that it is not dispositive.

It will be conceded that a codicil to be effective as such must be either dispositive or appointive. (Page on Wills, p. 39, sec. 45.) The codicil, in this case, is not appointive, but it is dispositive. The testator directs the executors to provide for his wife "from the remainder" of his estate an annual income of three thousand dollars, payable monthly as long as she lives, in accordance with the antenuptial agreement. This is clearly the testamentary disposition of property.

But it is urged that the codicil does not dispose of property; that it was merely "a direction to pay what he owed under the contract, which contract would have to be carried out whether or not he made a will." In other words, it is argued by petitioner that the codicil only provided for the payment of a "debt" under the antenuptial agreement.

The testator made three distinct and related promises in the antenuptial agreement—first, to give proper support to peti-

tioner during coverture; second, to "cause her to be paid" $250 per month during the remainder of her life if they married and she survived him, and, third, to pay petitioner "one hundred dollars per month during the time that may elapse prior to marriage and continue during her life should he die before their marriage." The contingency touching their failure to marry was thus fully covered by the express promise to pay one hundred dollars per month as long as she lived. This promise would have been enforceable. But the first and third promises need not be further considered here.

It is to the second promise that the codicil refers. What was that promise? It was not a promise that the testator would pay petitioner anything. The promise was that he would "cause her to be paid" $250 per month if they married and she survived him. But the executory agreement did not provide in what manner the testator was to cause her to be paid the sum of $250 per month. The mode selected by him, after their marriage, was the making of testamentary provision for her.

The codicil did something more than provide for the payment of a "debt"—it gave property to the petitioner by directing his executors to provide from the remainder of his estate an income for her after his death if she survived him. This is the meaning and purpose of the codicil. It seems clear that when the testator made the promise to cause her to be paid he intended to do precisely what he did do through the medium of the codicil. The codicil furnishes informing evidence that it was executed on account of the marriage and in order to perform the promise contained in the antenuptial agreement that he would cause her to be paid the annuity of three thousand dollars after his death. The codicil, and the promise in the antenuptial agreement to cause her to be paid, must be considered together as representing a common purpose to provide for her as his widow as long as she lived. Thus by the codicil the promise in the executory agreement was executed. In other words, the codicil had for its sole object the execution of the promise contained in the executory agreement. It is plainly apparent that with respect to the petitioner the intention of the testator from the date of the antenuptial agreement was to provide one hundred dollars per month during her lifetime, if they did not marry, and $250 per month as long as she lived if they did marry and

she became his widow. It is made clear, both by the executory agreement and the codicil, that the testator intended that after his death, if his wife survived him, she should receive $250 per month, and no more, and this purpose is accomplished by the codicil when read in connection with the clause in the antenuptial agreement that such sum ''shall be in lieu of any and all claims against the property or estate of said Francis Cutting whether community or any other property or interest of said Francis Cutting.''

5. It is further contended that by the codicil the testator attempts to abridge the rights of the petitioner under the antenuptial agreement by subordinating the annuity to paragraphs 2, 3, and 4 of the will, and that ''this could not have been a lawful intention if its object, either express or implied, was to deny, or contravene, or obstruct some other person's clear legal right.'' But the promise to provide for the petitioner was executory, and the testator was not restricted in the antenuptial agreement to any particular mode in causing her to be paid the annuity of three thousand dollars.

In view of the conclusions herein, it is not necessary to pass on the question whether the antenuptial agreement is a ''marriage contract'' (Civ. Code, sec. 1299), or a ''marriage settlement contract'' (Civ. Code, secs. 178–181), or whether the said terms are identical in their meaning.

No other points require notice. The judgment is affirmed.

Shaw, J., and Sloss, J., concurred.

Hearing in Bank denied.