[S. F. No. 8189. Department Two.—December 18, 1917.]

## In the Matter of the Estate of PAUL SEILER, Deceased.

WILLS—ANTENUPTIAL WILL—POSTNUPTIAL CODICIL—REPUBLICATION.— The will of a testator, made in 1909, though revoked by his subsequent marriage, was sufficiently republished by a codicil made in 1914 announcing the republication "in every particular" of the will theretofore made by him and then "in full force and effect," subject to certain changes made by the codicil.

ID.—EVIDENCE—IDENTIFICATION OF WILL REFERRED TO IN CODICIL.—Evidence examined and found sufficient to justify a finding that a codicil made in 1914 and republishing, with certain changes, a former will made by the testator and referred to in the codicil as being then "in full force and effect," referred to a will made by him in 1909 before his marriage, and not to another will claimed by contestants to have been made a few days before the codicil, but concerning which there was no sufficient proof that it had been executed with due formality, and there was evidence that whatever the document was, it was destroyed.

ID.—EVIDENCE—CAPACITY.—Although the testator was very ill, and under treatment involving the use of sedatives, when he executed the codicil, there was ample support in the evidence for the finding of the court that he was competent.

ID.—UNDUE INFLUENCE—PROOF REQUIRED.—To set aside a will for undue influence, clear proof is required.

ID.—BANK DEPOSIT—WRITTEN DECLARATION OF TRUST.—A memorandum in writing made by a testator in his lifetime accompanying a deposit of money in a bank, and signed by his own name, "Paul Seiler, Trustee," declaring, "in the event of my death the amount of my deposit shall be divided between my children equally in four parts to wit" (naming the four children), is not a will, but merely the creation of a trust in the moneys deposited, but the sufficiency or insufficiency of the trust sought to be created, is not involved in the instant case, and is not decided.

ID.—ESTATES OF DECEASED PERSONS—PROBATE PRACTICE—FILING TESTIMONY OF SUBSCRIBING WITNESSES.—Section 1314 of the Code of Civil Procedure, requiring the testimony of subscribing witnesses to be filed with the order admitting a will to probate, is directory, and failure to comply with that section does not warrant reversal of a judgment.

ID.—INTERLINEATIONS IN INSTRUMENT—EVIDENCE—HARMLESS RULINGS. The inclusion or the exclusion from the probate of a will of tho words, "now Bank of Italy," and the words, "First Savings Bank of Oakland," after the names of banks specified in the will as containing deposits of trust funds, was in either case harmless.

APPEAL from a judgment of the Superior Court of San Francisco.  J. V. Coffey, Judge.

The facts are stated in the opinion of the court.

A. G. Kazebeer, and J. E. Pemberton, for Appellant.

Cullinan & Hickey, Wilson & Haines, and Theodore A. Bell, for Respondents.

Charles A. Christin, *Amicus Curiae.*

MELVIN, J.—The widow of Paul Seiler, deceased, appeals from a judgment admitting to probate two certain instruments as the last will and testament of said Paul Seiler.

One of the documents admitted to probate was dated July 6, 1909. The latter, which is dated October 8, 1914, is in form a codicil to the testator's "last will." By it he announces the republication "in every particular" of the said will theretofore made by him and then "in full force and effect," subject to certain exceptions which we quote below:

"Because of the death of my son Adolph, I give one-third (⅓) of the business known as the Paul Seiler Electrical Works to his mother Hulda Seiler, and also give one-third (⅓) of said business to Frank Herrguth, and, also, because of my recent marriage I give one-third (⅓) of the said business to my present wife, Alice C. Seiler."

Appellant seeks a reversal upon numerous grounds, the first being that the will of July 6, 1909, was revoked. It appears that Mr. Seiler married contestant after the execution of the will of 1909, and it is argued that since thereby that writing was revoked (Civ. Code, sec. 1299), the reference in the codicil to a will, "now in full force and effect," could not have been intended as applicable to said instrument. If the will of 1909 was otherwise sufficiently identified as the one to which the testator referred in the codicil, although his marriage left the former instrument, if standing alone, without effect because of the provisions of section 1299 of the Civil Code, it does not follow that it had no testamentary force in making the postnuptial will. Indeed, a codicil may operate entirely to republish such an instrument in every particular. (*Estate of Cutting,* 172 Cal. 191, [Ann.

Cas. 1917D, 1171, 155 Pac. 1002].)   Upon the execution of the codicil the testator might say with truth, therefore, that a former will was "now in full force and effect."

But it is argued that a few days before the execution of this codicil, Paul Seiler had executed another testamentary instrument which better fitted the description of the will sought to be republished than the writing of July 6, 1909. The testimony regarding this instrument is conflicting.   Mrs. Alice C. Seiler, the contestant, said that it was brought to Mr. Seiler by his trusted employee, Mr. Herrguth.   She looked over the latter's shoulder while he was reading it. Regarding the document she testified as follows: "The substance of it as nearly as my memory will serve me was, 'On account of the death of my son, Adolph Seiler, I give the Paul Sciler Electrical Works to Frank Herrguth, and on account of my recent marriage to Alice C. Seiler, I give her one-fourth,' and below that there was a space, and below that it said 'I appoint Frank Herrguth executor without bonds.'

"There was no reference made therein to any other older will.   Mr. Seiler signed that paper.   I was present when he signed it.   Mr. Guthrie, Mr. Herrguth and Mr. Seiler signed it as witnesses.   They were all in the room when it was signed.   Mrs. Malone was standing in the door.   Mr. Seiler did not refer to it as his will at that time."   That some sort of a document was signed by Mr. Seiler appears in the testimony, but there was no showing that it was executed with due formality.   Whatever it was it was destroyed.   According to the testimony of Mrs. Malone, one of the daughters of Paul Seiler, this instrument was prepared by an attorney at her request.   After its execution Mr. Seiler told her that he had changed his mind and another writing was finally drafted, submitted to Mr. Seiler and signed.   There was no sufficient proof that the so-called "Herrguth Will" had been properly executed, and there was testimony to the effect that when the codicil of October 8, 1914, was drawn at Mrs. Malone's request while she, according to her testimony, was acting under her father's direction, the attorney who prepared it had before him the will of July 6, 1909, which, according to her father's orders, she had procured from a safe.   We are satisfied that notwithstanding the fact that the earlier document was not physically affixed to the codicil, there was

sufficient proof to justify the finding that the codicil referred to the will of July 6, 1909.

Upon the questions of alleged unsoundness of mind and undue influence there was a conflict of testimony which prevents us from disturbing the court's conclusions. It is undeniably true that Mr. Seiler was a very sick man when he executed the codicil and that he was under treatment which involved the use of sedatives. But the attending physician testified that between the 1st and the 15th of October, 1914, the patient was of sound mind when awake and not greatly under the influence of morphine. Speaking of Mr. Seiler, the physician said: ''When he was awake he was sound, and he would listen attentively to what you were telling him, and he would answer clearly and intelligently any questions that were addressed to him.'' Mr. Borden, one of the witnesses to the codicil, testified that Mr. Seiler was of sound mind when it was signed; and that prior to the signing of the document the testator read it aloud in the presence of the two witnesses and Mrs. Seiler (the contestant here). Mr. Schulze testified to the same general effect. There were other witnesses who were of the opinion that the testator was of disposing mind, and while there was some testimony the other way, there was ample support for the finding that he was competent.

As the contestant was present with her husband on the 8th of October, 1914, there can be little doubt that he was not acting under undue influence unless it previously had been exerted and had persisted up to the moment of the testamentary act. There was no proof of any such sinister pressure upon the mind and volition of Mr. Seiler. Clear proof of such influence is required in order that a solemnly executed testament may be set aside for undue influence. (*Estate of Clark,* 170 Cal. 418, [149 Pac. 828] ; *Estate of Gleason,* 164 Cal. 756, [130 Pac. 872] ; *Estate of Carithers,* 156 Cal. 422–428, [105 Pac. 127] ; *Estate of Lavinburg,* 161 Cal. 536–543, [119 Pac. 915] ; *Estate of Kilborn,* 162 Cal. 4–11, [120 Pac. 762].)

The motion for a new trial was based principally upon the discovery after trial of the contest of a document asserted by appellant to be testamentary in its nature. It was a memorandum accompanying a deposit of money in the Bank of Italy by testator. It was as follows:

"Oct. 1, 1911.

"In the event of my death, the amount of my deposit shall be divided between my children equally in four parts to-wit: Louise Malone, Clara Pape, Adolph Seiler, Hazel Vallejo;

"PAUL SEILER, Trustee."

This was not a will but merely the creation of a trust in the moneys deposited. (*Cahlan* v. *Bank of Lassen Co.*, 11 Cal. App. 533, [105 Pac. 765]; *Booth* v. *Oakland Bank of Savings*, 122 Cal. 19, [54 Pac. 370]; *McCloskey* v. *Tierney*, 141 Cal. 101, [99 Am. St. Rep. 33, 74 Pac. 699]; *Bell* v. *Moloney*, 175 Cal. 366, [165 Pac. 917].)

In the will of July 6, 1909, the testator bequeathed to his lawful children (naming them) "all the money deposited in their names in the various savings banks. I myself being Trustee (self-appointed) and said amounts being deposited by me with the understanding that the money shall be divided in equal parts."

There is no force in the contention that the judgment should be reversed because of failure of proponents to comply with section 1314 of the Code of Civil Procedure, by filing the testimony of the subscribing witnesses to the will with the order admitting the will to probate. The section is directory, and it is admitted that the testimony was subsequently reduced to writing and filed.

In the will of 1909 there were two interlineations which the court expressly excluded from probate. After the name of one of the banks specified as containing deposits of trust funds were the words, "now Bank of Italy," and the words, "First Savings Bank of Oakland," also appeared. Both titles were written after the execution of the will. We cannot see how appellant could be harmed either by the inclusion or omission of these interlineations.

The judgment is affirmed.

Henshaw, J., and Lorigan, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank, the court filed the following opinion on January 17, 1918, thereon:

THE COURT.—In denying the petition for a rehearing of this case in Bank the court deems it advisable to say that

the declaration in the Department opinion that the writing accompanying the deposit of money in the Bank of Italy was one creating a trust was not intended as a ruling that any trust created or attempted to be created by said writing is not open to attack in any other proceeding in which its efficacy may properly come before a court. This was a will contest and appellant's counsel emphatically contended that the writing in question was on its face a will. It was in answer to this contention that the Department opinion pronounced it to be on its face something quite different. The question of the sufficiency of the trust sought to be created was a matter not involved. The only question was whether or not the writing was testamentary, and the Department correctly declared that it was not.