[Civ. No. 7899. Second Appellate District, Division One.—October 3, 1931.]

In the Matter of the Estate of MARY ELIZABETH PENCE, Deceased. SECURITY–FIRST NATIONAL BANK OF LOS ANGELES, Executor, etc., Respondent, v. BERKELEY BAPTIST DIVINITY SCHOOL et al., Appellants.

Robert B. Gaylord, Gibson, Dunn & Crutcher, E. H. Conley, Louis Greenbaum, Sidney A. Wilson, Newlin & Ashburn and Tom C. McNamee for Appellants.

John H. Miller for Respondent.

CONREY, P. J.—The questions of primary interest in this case relate to a statutory restriction on testamentary gifts for charitable uses. Section 1313 of the Civil Code, as in force at the point of time to which this case relates, was as follows: *"Restriction on devise for charitable uses. Exceptions.* No estate, real or personal, shall be bequeathed or devised to any charitable or benevolent society or corporation, or to any person or persons in trust for charitable uses, except the same be done by will duly executed at least thirty days before the decease of the testator; and if so made at least thirty days prior to such death, such devise or legacy and each of them shall be valid; provided, that no such devise or bequest shall collectively exceed one-third of the estate of the testator, leaving legal heirs, and in such case a *pro rata* deduction from such devises or bequests shall be made so as to reduce the aggregate thereof to one-third of such estate; and all dispositions of property made contrary hereto shall be void, and go to the residuary legatee and devisee, next of kin, or heirs, according to law; and provided, further, that bequests and devises to the state, or to any municipality, county or political subdivision within the state, or to any state institution, or for the use or benefit of the state or any state institution, or to any educational institution which is exempt from taxation under section one *a* of article thirteen of the Constitution of the state of California, or for the use or benefit of any such educational institution, are excepted from the restrictions of this section; provided, however, that nothing in this section contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator

who leaves no parent, husband, wife, child or grandchild, or when all of such heirs shall have by writing, executed at least six months prior to his death, waived the restriction contained herein."

In this case it appears that the testator died on the tenth day of November, 1927. She had made a will on May 15, 1926; she made a codicil to that will on May 21, 1927; she made a second codicil on October 12, 1927. The second codicil is of minor importance. The controversies which have arisen in the case are the result of the execution of the first codicil. By the terms of the original will the testator gave to a trustee for the charitable institution known as The Chicago Home of Incurables the sum of $10,000; and to the charitable institution known as the Woman's American Baptist Home Mission Society the sum of $10,000; and to the educational institution known as the Berkeley Baptist Divinity School the sum of $10,000. There was also a personal specific bequest of $2,000 to a friend. These bequests were followed by the following proviso: "Provided, however, that in the event the total amount of all of the bequests hereinbefore contained shall exceed one-half of the distributive net value of all of the estate of which I may die possessed, then each of said foregoing bequests shall be proportionately reduced in amount so that the aggregate amount of all of said bequests shall be equal to one-half of the distributive value of all the estate of which I may so die possessed." She then gave the residue of her estate to her husband, Kingsley A. Pence. Hereinafter, for the sake of brevity, we shall refer to the first codicil as the codicil; and to The Chicago Home for Incurables as the Home for Incurables; and to the Woman's Baptist Home Mission Society as the Mission Society; and to the Berkeley Baptist Divinity School as the Divinity School.

The codicil was executed to cover the contingency of the death of decedent's husband before her own death. The codicil provides that in that event the testator gives, share and share alike, to the named trustee of the Home for Incurables, and to the Mission Society, and to the Divinity School, the property given to her husband in the will as originally executed. "All of the above bequests to be in addition to, and upon the same terms and conditions as the bequests already given to them in my last will and

testament.'' The codicil closed thus: ''Except as herein modified, I hereby republish and redeclare my said last will and testament.''

At this point we should hold in mind the following proviso of said section 1313 of the Civil Code: ''provided, however, that nothing in this section contained shall apply to bequests or devises made by will executed at least six months prior to the death of a testator who leaves no parent, husband, wife, child or grandchild, . . . '' The record shows that at the time of her death Mrs. Pence had no living parent, husband, wife, child or grandchild. If both will and codicil had been executed more than six months before the death of the testator, the entire residue of the estate would have been distributed to the institutions named in the will. As will later appear, however, the restrictions contained in said section 1313 have in this case caused intestacy as to a part of the estate and, therefore, it became necessary for the court to ascertain who were the next of kin and entitled to inherit. It is an unquestioned fact that Martha A. Pollard was properly determined to be the sole heir at law, unless her claims are inferior to those of James Wellington Duke, who also claims to be the sole heir at law.

After settlement of the final account of the executor there remained for distribution the sum of $84,802.34. Certain bequests of personal property and cash amounting to $6,400 were allowed and paid, and about these there is no dispute. A hearing was had upon the petition for distribution and the opposition of the several parties thereto, and the court made full findings of fact preliminary to the decree. Among other things the court found that the codicil executed on the twenty-first day of May, 1927, and within a period of six months prior to the death of said testatrix, was a republication of the last will and testament of said testatrix as of the date of the codicil; that the bequests and devises to the Home for Incurables and the Mission Society, were to charitable or benevolent societies or corporations, or in trust for charitable uses, as defined by section 1313 of the Civil Code; that the bequests and devises to the Divinity School were to an educational institution which is exempt from taxation under section one a of article XIII of the Constitution of the state of California, and as such are excepted from the restrictions of section 1313 of the Civil

Code; that the bequests and devises contained in the will and in the codicil, to the Home for Incurables, and to the Mission Society, in excess of one-third of the estate of the decedent, are contrary to the provisions of said section 1313; that the bequests in the codicil devising the remainder of the estate of decedent to the three institutions named was not a bequest or devise to a class; that, therefore, the Divinity School was not entitled to succeed to that portion of the legacies given to the Home for Incurables and the Mission Society in excess of one-third of the estate, which lapses. From the decree which was entered pursuant to the findings of fact and conclusions of law made by the court these appeals, five in number, have been taken by the several parties. The appellant Martha A. Pollard has died since the appeals were taken and the trustees of her estate have been substituted for her in this proceeding.

The appeal of Mrs. Pollard is from that part of the decree of distribution which awarded to the trustees of the Home for Incurables the sum of $14,133.72 (with the statutory interest allowed thereon) ; and which awarded to the Mission Society the like sum of $14,133.72, with the interest thereon; and which allowed to the Divinity School the full sum of $26,134.11, with the interest thereon. As stated by counsel for Mrs. Pollard in their briefs: ''This appeal presents the sole question of whether or not the Berkeley Baptist Divinity School in an educational institution which is excepted from the restrictions and limitations of section 1313 of the Civil Code.'' The test is whether or not the institution at the time of the death of the deceased herein was an educational institution which was then exempt from taxation under section one *a* of article XIII of the Constitution of the state of California. According to that section of the Constitution the exemption from taxation as therein described and limited is allowed to ''any educational institution of collegiate grade, within the state of California, not conducted for profit''. After hearing the evidence the court found that the Divinity School was an educational institution of collegiate grade. That it is within the state and is not conducted for profit, are facts not contested. Appellants Pollard and Duke contend that this finding is not sustained by the evidence, and that their contention is sustained by the decision of the Supreme Court in *Pasadena University* v.

*Los Angeles County,* 190 Cal. 786 [214 Pac. 868]. The principle announced in that case is that the words of the Constitution in the section referred to mean, that exemption from taxation is granted to an institution of collegiate grade as a whole, and not otherwise. It was held that upon the facts proved by the evidence in that case the institution did not comply with the standard thus set. In the case at bar we have read the evidence and we think that the evidence is sufficient to sustain the finding of the court on this question. This being so it follows that the Divinity School was qualified to take whatever was given to it by the terms of the will.

The appeals of the Mission Society and of the Home for Incurables are from that portion of the decree which decrees that Martha A. Pollard is entitled to the residue of the estate, and distributes said residue to her. As more definitely stated in the brief of counsel for the Home for Incurables and its trustees, their appeal is from that part of the decree which restricts the share distributable to the trustees to the sum of $4,133.72 in addition to its bequest of $10,000. The court in making its computation of the amount of residue of the estate left after paying the specific bequests, excluded each of the three $10,000 gifts from the list of specific bequests, and treated them as part of the residue. The action of the court in this respect resulted from its finding that the codicil of May 21, 1927, was a republication of the will as of the date of the codicil; from which the court seems to have concluded that the legacies given for charitable purposes in the original will, as well as in the codicil, should be treated as subject to the provisions of section 1313 of the Civil Code. "The execution of a codicil, referring to a previous will, has the effect to republish the will, as modified by the codicil." (Sec. 1287, Civ. Code.) "Several testamentary instruments, executed by the same testator are to be taken and construed together as one instrument." (Sec. 1320, Civ. Code.) In *Estate of Cutting,* 172 Cal. 191, 196 [Ann. Cas. 1917D, 1171, 155 Pac. 1002, 1004], where the court had occasion to deal with this question, the court said: "The codicil refers to the will, and operates as its republication, and the two are to be regarded as forming but one instrument, speaking from the date of the codicil." Thus the general rule is clear. It is also true, however, as a rule of construction, that the

intention of the testator must be preserved if possible. The courts have in many instances refrained from applying the rule regarding republication by codicil with all the severity which would attend the interpretation of a new will by which all previous wills had been set aside. In *Estate of Matthews,* 176 Cal. 576 [169 Pac. 233], the court referred to this exception and said: *"Estate of McCauley,* 138 Cal. 432 [71 Pac. 512], is an excellent example of the application of the exception. In that case it was held that where valid bequests to charity had been made by the terms of the will, they were not nullified by a republication due to a codicil having no special reference to the said bequests, such republication occurring within thirty days of the death of the testatrix, notwithstanding the fact that under section 1313 of the Civil Code an original bequest in trust for charitable uses fails if the donor dies within thirty days of the execution of the testament."

So in the case at bar, although the decedent executed the second codicil less than thirty days before her death, this fact does not operate to invalidate the charitable gifts that were made. This is so because the second codicil merely provided for certain personal bequests without in any manner referring to the charitable bequests. Under the doctrine of the McCauley case, *supra,* the bequests contained in the original will and the first codicil remain in force.

But a different situation is presented by the first codicil when considered in relation to the original will. This codicil did make special reference to the previously made bequests to the three institutions mentioned, and changed the amounts thereof and the method of computing the amounts thereof. We are of the opinion that the execution of the first codicil, considered in the light of the terms and purposes expressed therein, was a republication of the entire will as of the date of the first codicil, and brought the charitable bequests of the original will, as well as of the codicil, down to a date whereby they became subject to the restrictions contained in said section 1313 of the Civil Code. From this we draw the further conclusion that the court did not err in its decision concerning the amount which should be distributed to the trustee for the Home for Incurables, nor as to the amount to be distributed to the Mission Society.

On behalf of the Divinity School it is further contended that the school, under the residuary clause, is entitled to any portion of the residuum which otherwise would go to the Chicago Home and the Mission Society, but which they are prevented from receiving by reason of the "one-third restriction" upon gifts made within six months of death. In other words, it is contended that under the residuary clause of the will if there is any portion of the estate which the prohibited charities cannot receive, then the Divinity School is entitled to that portion, to the exclusion of the next of kin. The residuary clause as stated in the codicil, is a gift to three named legatees "share and share alike". It is admitted that the quoted expression on its face indicates a gift in common, rather than one which goes to the "survivor". Manifestly this must be so. Section 683 of the Civil Code provides that a "Joint interest is one owned by several persons in equal shares, by a title created by a single will or transfer, when expressly declared in the will or transfer to be a joint tenancy, or when granted or devised as executors or trustees as joint tenants." Section 686 of the Civil Code declares that "every interest created in favor of several persons in their own right is an interest in common, . . . unless declared in its creation to be a joint interest, as provided in section 683, . . . " Section 1350 of the Civil Code provides: "A devise or legacy given to more than one person vests in them as owners in common." Seeking to avoid the effect of these rules, the Divinity School contends that the residuary gift runs to a class, and that, two of the residuary beneficiaries being disqualified, they are in legal effect dead, and the qualified beneficiary is therefore entitled to any excess in the residuum. With this contention we are not able to agree. "The rule or presumption is that the gift is not one to a class where the will designates the takers by name, or identifies them by their number; and this inference will be given effect in the absence of anything to show a contrary intention. Thus, where property is expressed to be given to A, B, and C, the survivors do not take the share of one who predeceased the testator. Nor does the rule in avoidance of intestacy overcome the presumption that the devisees or legatees were intended to take as individuals and not as a class." (26 Cal. Jur. 946; see, also, 40 Cyc. 1473, and 28 R. C. L., p. 262; *Estate of Hall,*

183 Cal. 61 [190 Pac. 364].) It is our conclusion that the
Divinity School is not entitled to take as ultimate residuary
beneficiary to the exclusion of the next of kin.

It remains only to consider the appeal of James
Wellington Duke. This appellant contends that the court
erred in deciding that the decedent left surviving her as
next of kin only the said Martha A. Pollard; also that the
court erred in not finding that said Duke was the next of
kin of the decedent, related in the same degree of kindred
to the decedent as is the said Pollard, but that, for the
reason that Pollard claims through an ancestor more remote
than does Duke, that Duke is therefore entitled to all the
residue of the estate of said decedent occasioned by the
lapsing of a part of the legacies. On this branch of the case
we are of the opinion that since appellant Duke claims only
as the adopted son of a predeceased brother of the decedent
Mary Elizabeth Pence, he is not entitled to rank as one of
next of kin to the decedent.

Pursuant to evidence about which there is no dispute,
the court found that Mrs. Pollard was a sister of the half
blood of the mother of decedent; that James Wellington
Duke is the adopted son of Wellington Duke, deceased
brother of said testatrix, "and that the said Wellington
Duke predeceased the testatrix, leaving no widow, father,
no mother, sister, nor brother nor any children other than
the said James Wellington Duke". In relation to the right of
inheritance of an adopted son under the circumstances set
forth in this case, reference is made to sections 228 and 229
and subdivision 5 of section 1386 of the Civil Code. They
are as follows: "Sec. 228. *Effect of adoption.* A child,
when adopted, may take the family name of the person
adopting. After adoption, the two shall sustain towards
each other the legal relation of parent and child, and have
all the rights and be subject to all the duties of that re-
lation." "Sec. 229. *Effect on former relations of child.*
The parents of an adopted child are, from the time of
adoption, relieved of all parental duties towards, and all
responsibility for, the child so adopted, and have no right
over it." Section 1386, subdivision 5, reads thus: "If the
decedent leaves neither issue, husband, wife, father, mother,
brother, nor sister, the estate must go to the next of kin, in

equal degree, excepting that, when there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claim through the nearest ancestor must be preferred to those claiming through an ancestor more remote.''

There can be no doubt that upon the death of Wellington Duke the said James Wellington Duke as his adopted son became his heir and entitled to succeed to his estate precisely the same as a child of the blood. In this case, however, appellant is not claiming as the heir of his adopted father. He is claiming as next of kin, on the theory that he and the decedent have a common ancestor in the person of Millicent Duke, who was the mother of the decedent Mary Elizabeth Pence and also mother of said Wellington Duke. Mrs Pollard, on the other hand, was a half-sister of said Millicent. The father of Millicent was the common ancestor of Mrs. Pollard and of the decedent herein.

The rules of computation of the degrees of kindred as found in sections 1389, 1390 and 1393 of the Civil Code evidently contemplated relationship by consanguinity. It would be only an artificiality of statutory interpretation that could lead to an application of these sections to an adopted person. At page 8 et seq. of 38 A. L. R. there is an extensive note on the subject of the right of an adopted child to inherit from kindred of adopting parents. The decisions vary, not only in the principles approved, but also by reason of differences in the statutes of the several states. Generally speaking, the great weight of authority is against the contentions of appellant Duke in this case. We think that the majority rule is the rule which most nearly conforms to the law of this state. While the precise question presented in this case, concerning inheritance rights of an adopted person, has not been directly decided in California, there are two cases in which the applicable rules or principles have been discussed. These are the *Estate of Darling*, 173 Cal. 221 [159 Pac. 606], and *In re Mercer's Estate*, 205 Cal. 506 [271 Pac. 1067]. It seems to us that the effect of those decisions runs in favor of the proposition that the rights of inheritance of an adopted child, although complete with respect to the adopting parent, do not extend to the collateral relatives of that parent.

The decree of final distribution as entered in the court below is affirmed.

Houser, J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 30, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 30, 1931.