**BUCHANAN et al. v. NATIONAL SAVINGS & TRUST CO. et al.**

Court of Appeals of District of Columbia.

Submitted December 5, 1927. Decided January 9, 1928.

No. 4651.

**1. Wills ⬥439—Testator's intent governs construction of will.**

Intent of testator, to be gathered from language used in will and situation and circumstances surrounding him, must control in construing will.

**2. Wills ⬥455—Testator's intent is considered to elucidate language in will, not to contradict or vary its terms.**

In construing will, testator's intent is considered for purpose of elucidating language used, not to contradict or vary its terms; object being to give court point of view of testator, as aid in interpretation of language used by him.

**3. Wills ⬥476—Will and codicil are considered as single instrument, executed at date of codicil, unless there is manifest intention to contrary.**

Where codicil has been added, will and codicil are to be considered as single instrument, as if executed at date of codicil, unless there is manifest intention to contrary.

**4. Wills ⬥684(3)—Will held to manifest intention that dividends on testator's stock, declared before his death, but payable on dates subsequent to death to stockholders of record on such dates, should be treated as income rather than corpus of trust estate.**

Will providing that there should be paid to each of testator's children from net income of certain stock a sum sufficient to bring income of each child up to $15,000 *held* to manifest intention that cash dividends declared on stock before testator's death, but payable on dates subsequent to death to stockholders of record on such dates, should be treated as income, rather than as part of corpus of trust estate, created by will and consisting of such stock, in view of testator's obvious intention to provide income for children which would not have been provided, unless dividends were treated as income.

**5. Evidence ⬥65—Testator, residing in District of Columbia, held presumed to know that in such jurisdiction cash dividend payable from corporation's surplus earnings is deemed income.**

Where testator was resident of District of Columbia, he was presumed to have known that in such jurisdiction ordinary cash dividend payable out of surplus earnings of corporation is to be deemed income.

**6. Wills ⬥486—Testator, owning corporate stock, held presumed familiar with modern practice of declaring dividends, and to have had such practice in mind when making will.**

Testator, owning large amount of corporate stock at time of death, *held* presumed to have been familiar with modern practice of corporations to declare dividend in favor of shareholders of record at some fixed time in future, and to have had that practice in mind when making will.

**7. Corporations ⬥155(4)—General rule is that dividend on corporate stock belongs to owner of shares at time dividend is declared.**

General rule for determining person to whom dividend on shares of corporate stock is payable is that it belongs to owner of shares at time dividend is declared.

**8. Corporations ⬥155(4)—Corporate dividend, made payable to stockholders of record at future date, does not necessarily belong to owner of shares at time dividend is declared.**

Rule that dividend on shares of corporate stock is payable to owner of shares at time dividend is declared does not obtain, where at time dividend is declared it is made payable to stockholders of record at future date.

Appeal from the Supreme Court of the District of Columbia.

Bill by the National Savings & Trust Company and another, executors under the will of James A. Buchanan, and others, for instructions as to whether certain cash dividends declared on stock owned by deceased should be treated as income, or as part of the corpus of trust estate established by deceased. From the decree, Helen Warren Buchanan and others, by their guardian ad litem, Wharton E. Lester, appeal. Affirmed.

W. E. Lester, of Washington, D. C., for appellants.

B. S. Minor, A. P. Drury, S. C. Peelle, C. F. R. Ogilby, P. E. Lesh, D. D. Drain, J. F. Barnard, and G. B. Craighill, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

ROBB, Associate Justice. Bill in equity by the executors and trustees under the will of James A. Buchanan, late of the District of Columbia (who died here on May 18, 1926), for instructions as to whether certain cash dividends, aggregating $118,751.50, declared on stock of the Bristoe Myers Company on April 6, 1926, and payable on dates subsequent to the death of the testator to the stockholders of record on such dates, should be held by such executors and trustees as a part of the corpus of the trust estate, or treated as income. The case was heard below upon the petition, answers thereto, and an agreed statement of facts.

The testator was survived by three adult children—a married daughter, Helen Buchanan Jones, aged 37 years, who had no children; a married son, John R. Buchanan, who was 35 years of age on November 7, 1926, and who had three infant children (represented here by their guardian ad litem); and an unmarried son, Francis J. Buchanan, 33 years old.

Under paragraph eighth of the will the testator gives to his trustees "all of my shares of the Bristol Myers Company," subject to the following trusts:

"Until the termination, as hereinafter provided, of the trusts created in and by this, paragraph eighth, of this my will, said trustees and the successor in trust shall hold, manage and administer said trust property and shall retain all of said shares intact and in one block for a period of three years after my death, and shall collect the income, dividends and profits of said trust property, and, out of the same, pay all taxes and assessments on any and all of the property at any time belonging to the trusts created in and by this,

paragraph eighth, of this, my will, and also all necessary and proper costs, charges and expenses of any and every description, connected with or growing out of the trusts created in and by this, paragraph eighth, of this, my will.

"After all of said costs charges and expenses are paid, as hereinbefore directed, my said trustees, or the successor in trust, shall hold all of the net income of said shares of stock in the Bristol Myers Company in trust for my three children, Helen, John Ripley, and Francis James, in equal shares, and from time to time pay over to my said children so much of their respective shares of said net income of said trust property as may be necessary to make the annual payments on account of income to each of said children the sum of fifteen thousand dollars ($15,000), in case the one-third share of the income from my residuary estate, as hereinafter provided, be not sufficient to pay to each of said children the sum of $15,000 annually until they attain, respectively the age of thirty-five years, and thereafter to each of my said children who attains that age, his or her respective share of said net income of said trust property, together with all accumulations of said respective shares, until their respective deaths."

Provision then is made to meet the contingency of the death of one or more of testator's children, either before or after his death, and for the termination of the trust estate upon the death of the last survivor of his children, when the corpus is to be divided among the testator's descendants then living. This paragraph eighth of the will then further provides:

"I further direct that, inasmuch as the trusts created in and by this, paragraph eighth, of this, my will, are created by me for the express purpose of protecting my children and descendants from want and inconvenience, by reason of the vicissitudes of life, so far as reasonable foresight can prevent, it is my will that the portion of the net income, rents and profits of the trust property, to be paid to any of my children or descendants, by my said trustees, under the provisions of this, my will, shall be so payable to each of said children or descendants respectively only upon his or her personal receipt, and that none of them respectively shall have any power to anticipate, or in any manner encumber the same or any part thereof."

Under paragraph tenth of the will, the residuary estate is devised and bequeathed to the same trustees, to pay one-third of the net

income to each of testator's three children. Upon attaining the age of 35 years, each of the sons becomes entitled to one-third of the residuary estate, but the daughter is entitled to the income only of the other one-third; and upon her death the principal is to go to her issue, if any, or in the absence of issue to her brothers or their descendants, as she may by her will appoint. Paragraph tenth further provides that the testator's country residence, "Ayrshire," shall not be sold so long as the daughter, Helen Buchanan Jones, and the son, Francis, or either of them, shall desire to reside there, in which event they shall "pay all taxes and insurance thereon and all expenses and charges necessary to the proper maintenance and upkeep thereof." A similar privilege is given the son John, with respect to the testator's farm known as "Heartlands."

By a codicil dated March 25, 1924, republishing, ratifying, and confirming the prior will, $25,000 is bequeathed to the son John, to equalize, as between him and the other children, their respective shares in the estate; and by a second codicil, dated November 19, 1925, republishing, ratifying, and confirming the prior will and codicil, a provision in the will, requiring the trustees to hold the Bristol Myers stock for at least three years, is changed, and the trustees are authorized in their discretion to sell the stock at any time after the testator's death, provided an option be given to William M. Bristol to purchase the preferred stock.

On May 17, 1923, or about 10 months prior to the date of the first codicil, the testator conveyed 1,770 of his 7,770 shares of the common stock of the Bristol Myers Company to the appellee National Savings & Trust Company, as trustee, to pay one-third of the net income therefrom to his three children, that income in the form of dividends amounting to $35,400 in 1924, $38,940 in 1925, and $42,480 in 1926. This trust was to terminate on the death of the grantor. On April 12, 1926, the testator conveyed 1,500 additional shares of such common stock to the same trustee upon the same terms and conditions. At the testator's death his children were receiving the income on these 3,270 of the 7,770 shares of the common stock involved; that income then amounting to about $25,000 a year for each child.

The three children of the testator received $8,750 each from the net income of the residuary estate for the seven months ending December 31, 1926; that is, from the date of testator's death to the end of the year.

[1] The intent of the testator, to be gathered from the language used in his will and the situation and circumstances surrounding him, must control the determination of the question involved. Gibson v. Gibson, 53 App. D. C. 380, 292 F. 657; Gilmer v. Stone, 120 U. S. 586, 590, 7 S. Ct. 689, 30 L. Ed. 734; Colton v. Colton, 127 U. S. 300, 310, 8 S. Ct. 1164, 32 L. Ed. 138. In the Colton Case the court said: "The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed."

[2, 3] Such a consideration is to be indulged for the purpose of elucidating the language used in the will, not to contradict or vary its terms (Association of Survivors of Seventh Ga. Regiment v. Larner, 55 App. D. C. 156, 3 F.[2d] 201); the object being to give the court the point of view of the testator as an aid in the interpretation of the language used by him. And where a codicil has been added, the will and codicil are to be considered as a single instrument as if executed at the date of the codicil, unless there is a manifest intention to the contrary. Dunham v. Averill, 45 Conn. 61, 29 Am. Rep. 642; Hobart v. Hobart, 154 Ill. 610, 39 N. E. 581, 45 Am. St. Rep. 151; In re Brann, 219 N. Y. 263, 114 N. E. 404, L. R. A. 1918B, 663; Gilmor's Estate, 154 Pa. 523, 26 A. 614, 35 Am. St. Rep. 855; In re Cutting, 172 Cal. 191, 155 P. 1002, Ann. Cas. 1917D, 1171; 28 R. C. L. 190.

[4] What situation and circumstances surrounded the testator here? He had three adult children and three very young grandchildren. A reading of the will discloses beyond question that his principal concern was the welfare of his children, and it is equally clear that his desire was that their income should continue to be sufficient to maintain their usual standard of living. At the time he executed the first codicil he had, through the creation of the first trust, set aside for his children during his life a substantial part of the very stock here involved. He therefore knew, when he republished his will, that up to the day of his death his children would receive the income from the stock forming the basis of the first trust. Later he set aside still more of this stock for the same purpose, disclosing very clearly an intention to provide his children with what he considered an adequate income. The language of paragraph eighth of the will requires his trus-

tees to "collect the income, dividends and profits" of the Bristol Myers Company stock, and, after paying all charges and expenses, "from time to time pay over to my said children so much of their respective shares of said net income of said trust property as may be necessary to make the annual payments on account of income to each of said children the sum of fifteen thousand dollars."

[5-8] The testator was a resident of the District of Columbia and presumed to have known that in this jurisdiction an ordinary cash dividend, payable out of the surplus earnings of a corporation, is to be deemed income. Gibbons v. Mahon, 136 U. S. 549, 10 S. Ct. 1057, 34 L. Ed. 525; Towne v. Eisner, 245 U. S. 418, 38 S. Ct. 158, 62 L. Ed. 372, L. R. A. 1918D, 254; Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570. He also is presumed to have been familiar with the modern practice of corporations to declare a dividend in favor of shareholders of record at some fixed time in the future, and to have had that practice in mind when making his will. While the general rule, for determining the person to whom a dividend on shares of corporate stock is payable, is that it belongs to the owner of the shares at the time the dividend is declared, that rule does not obtain where at the time the dividend is declared it is made payable to stockholders of record at a future date. In Richter & Co. v. Light, 97 Conn. 364, 116 A. 600, the court said: "It is a matter within common knowledge that, to prevent uncertainty and confusion in business transactions often involving the ownership of large sums of money, and to determine definitely the rights and obligations of the corporation to its present and to its future stockholders, and to fix accurately the status of each of them toward the corporation and toward each other, it has long been the custom of directors to declare distinctly that the dividend shall be made to stockholders of record on a specified day, payable on a named day thereafter, and that the transfer books shall be closed from the first to the later day."

In the Richter Case the court further observed that it found no authority limiting the power of the board of directors to fix the day when a part of the assets of the corporation should be separated and vested in the stockholders as individuals. See, also, Nutter v. Andrews, 246 Mass. 224, 228, 142 N. E. 67.

In the present case the testator has expressly declared his intention to be that there shall be paid to each of his children, from the net income of the stock set aside under paragraph eighth, a sum sufficient to bring the annual income of each child up to $15,000. Had he lived, as already noted, the income of each child would have exceeded that sum. Unless the cash dividends, collected by the trustees on this stock between the date of the testator's death and the end of the year, are to be treated as income, and hence as available to make the payments contemplated, each of the children would receive $8,750, instead of $15,000. Such a result could not have been intended by the testator, as it would be wholly inconsistent with the general scheme disclosed. We therefore agree with the learned trial justice that these dividends should be treated as income.

The decree is affirmed, the costs to be paid by the appellees as executors and trustees.

Affirmed.