**FRANZ v. BUDER et al.**

No. 6682.

United States District Court
E. D. Missouri, E. D.

April 4, 1932.

See also 82 F.Supp. 388.

Jesse T. Friday, of St. Louis, Mo., and Allen McReynolds, of Carthage, Mo., for plaintiff.

T. M. Pierce and Samuel H. Liberman, both of St. Louis, Mo., for defendant Mississippi Valley Trust Co., as Admr. c.t.a. of Estates of Ernst H. Franz and Walter G. Franz.

Buder & Buder, of St. Louis, Mo., for defendants G. A. Buder, G. A. Franz, individually, and as Trustees, Johanna F. Fiske and others.

Earl F. Nelson, of St. Louis, Mo., for Earl F. Nelson, guardian ad litem.

Stratton Shartel, Atty. Gen., Henry H. Stern, Sp. Asst. Atty. Gen., and Richmond C. Coburn, of St. Louis, Mo., for State of Missouri.

FARIS, District Judge.

The matters before the Court have to do with many motions and exceptions, made and filed by divers parties to the cause, and others, or, at least, one other, namely, the State of Missouri, which comes in by way of an intervention for its own interest, or alleged interest.

I see no reason why, the whole matter, and all of the motions, interventions and exceptions may not be fully dealt with in a single oral opinion, bottomed upon which the various necessary orders may be settled, signed and entered. All of the motions, matters and things before me are so inextricably entangled by interdependency as that hardly one of them may be ruled, without ruling upon all of them, save and except the matter of an alleged fee and lien therefor, claimed by S. Mayner Wallace, Esquire, against the individual interest in the trust estate of plaintiff, Ehrhardt W. Franz.

### Claim and Alleged Lien of S. M. Wallace, Esquire.

This claim has been three times set down for final hearing. On two occasions counsel were not ready, and on the third setting no one appeared, and the matter went back without order to the general docket. Since I can, in fairness, delay the other matters no longer, I shall, until the claim of Mr. Wallace can be fully heard and ruled, temporarily order that, out of the sum, amount and interest apportionable under the decree and orders of this Court to plaintiff, Ehrhardt W. Franz, there be paid by the Trus-

tees into the registry of this Court the sum of $40,000, in cash, or that amount in value in such equivalent properties as such Trustees may hold for said Ehrhardt W. Franz, and that said sum of $40,000, or so much thereof as this Court may hereafter order, if any, may stand in lieu of said Franz' entire interest in the estate, so far as concerns the alleged claim and lien of Mr. Wallace. While the sum so to be paid into Court shall have the lien, if any, of Mr. Wallace transferred to it, there is otherwise no significance to be attributed to the amount fixed and ordered to be retained.

Upon the final hearing and ruling upon the claim and alleged lien of Mr. Wallace, the said sum of $40,000, or the balance thereof, if any, shall be ordered to be paid to plaintiff, Ehrhardt W. Franz, less such costs, if any, as may lawfully attach to the same.

The Motion of Plaintiff, Ehrhardt W. Franz, for Contribution from the 6-2/3 Interests, for His Costs, Expenses and Attorneys' Fees.

I am constrained upon the record to overrule this motion. The reasons for doing so are numerous. A substantial sum is embraced among the items of this motion for the hotel bills and travelling expenses of Ehrhardt W. Franz, while consulting, and in order to consult, with his attorneys, and in attending upon trials and hearings.

These defendants from whom movant now desires contribution could, of course, have been allocated, on account of apparent interest, to plaintiff's side of the case. But they were not so placed in the case, and they chose to become adversary parties in fact, by assuming in their pleadings, attitudes hostile to movant's position and prayer for relief. Moreover, and this consideration, I think, is conclusive, they took no adjudged or decreed relief, though it was open to them by the opinion and finding of this Court (see oral opinion on final decree) and it was proffered by the proposed final decree submitted by plaintiff's solicitor. The final decree is silent as to the interests of the 6-2/3 remaindermen (so called herein for brevity), because they did not ask to have their interests decreed, and these interests have never been decreed by this Court.

Necessarily, upon the evidence, papers, documents and former decree of the State Court, rendered on the sixteenth day of June, 1910, it was clear that these 6-2/3 interests were remaindermen, precisely as was plaintiff himself. But they appeared herein by their own solicitors, asked for no affirmative relief, filed no cross-bills, but contented themselves with denial of the existence of the remainder interest in dividends of stock. It is true that, in addition to the above denial, there were set up by them affirmative facts touching the execution by them of divers documents, and the receipt by them of divers gifts of money by the tenant for life, which, accruing since the decree of the State Court, were averred by them to have had the effect of exhausting their interests in remainder.

While this Court finds, as, clearly, it ought to have found under the facts and the law, that none of the things done by them subsequent to the decree of the State Court had the effect to destroy their remainders, yet, for reasons best known to them, they did not see fit anywhere to ask for a formal decree in their favors, and so none was entered.

The defense that dividends declared in stock and not in cash, were income and so inured to the tenant for life as her absolute property, rather than that such dividends were corpus, and so must be allocated to the estate in remainder, was a doubtful legal question when this action was begun. Two views were held about the question. In many, perhaps in the greater number of the States of the Union, dividends declared in stock were held to be income. In the rest of the States, such dividends were held to be a part of the corpus of the estate. There was but one opinion by the Supreme Court of the United States, which seemed squarely to rule the point. Gibbons v. Mahon, 136 U.S. 549, 10 S.Ct. 1057, 34 L.Ed. 525. The Supreme Court of Missouri had not at that time ever ruled the question. It has since done so, and, in effect, followed Gibbons v. Mahon, supra; Hayes v. St. Louis Union Trust Company, 317 Mo. 1028, 298 S.W. 91, 56 A.L.R. 1276.

Moreover, as forecast, it was not wholly free from legal doubt as to whether the question was one in which the local law should govern, or whether it was one wholly relegable to federal decisions. This, obviously, was one of the important legal questions, in this case. The other defenses were ancillary and incidental; for, obviously, if stock dividends were by law allocable to income and not corpus, then the remainder interests in effect were worth practically nothing, and their continued existence vel non was well-nigh an academic question.

Inevitably, of course, the question whether stock dividends are allocable to income or corpus, would have arisen in this case sooner or later. If it had not arisen herein, it would, without doubt, have arisen after the death of the life tenant. But not necessarily among the plaintiffs and defendants here, as it has arisen.

■ Concededly, when one of a class sues for the benefit of all persons who belong to such class, and succeeds in recovering or preserving a fund, such suitor may demand contribution for moneys laid out in fees of counsel and for expenses of maintaining the litigation. But the above conditions are not involved in the case at bar. This case is anomalous, and if the test be, as I think it is, that the result of the suit (in which the charges are made) must be beneficial to the members of the class sought to be charged, then movant cannot, and should not, recover. As pointed out, there were no concrete benefits to the 6-2/3 remainder interests, who employed, moreover, their own solicitors in the case, whom, of course, they must personally pay, without hope of contribution.

So, the motion for contribution will be overruled.

### Disposition of Cash Dividends Declared on the Burroughs Stock on March 18, 1930.

On March 18, 1930, there was declared by the Burroughs Adding Machine Company, a cash dividend on the 282,500 shares of stock held by the Trustees herein, to the credit of the remainder estate. By this declaration the Burroughs Company provided, that such dividend should be payable on the fifth day of June, 1930, to such stockholders as were so by the record on May 9, 1930.

Sophie Franz, the life tenant, departed this life on April 14, 1930. If she had lived until May 9, 1930, there would have been perhaps no question as to her absolute right to this dividend as income; but she died, and on May 9, 1930, she was not the holder of record of the stock. So, should it go to the estate of Sophie Franz, or should it go to the remaindermen, as such absolutely?

This question is raised by divers parties to the record and in various ways, usually by exceptions to the report of the Trustees, who have allocated this dividend to the absolute estate of Sophie Franz.

■ Counsel seem to agree that the law of the State of domicile of the corporation declaring the dividend, is controlling, but that there have been no decisions on the question in that State. So, then, the point must be ruled upon principle and upon decisions upon the question in other states wherein it has been ruled.

■ I am of opinion that this dividend should have gone directly to the remaindermen, because they, and not Sophie Franz, were the owners of this stock on May 9, 1930, and on the subsequent date at which, by the resolution declaring it, it became payable. It would serve no useful purpose, here or elsewhere, to mull over the law or to philosophize over the reason of the thing.

Upon the point, I feel constrained to follow the case of Buchanan v. National, etc., Company, 57 App.D.C. 386, 23 F.2d 994, loc. cit. 997. While abstract justice would clearly say that he who owned the stock while the dividend was being earned, ought to have it, yet, the nature of a dividend regarded, the above consideration must yield to other numerous and weightier arguments. Richter & Co. v. Light, 97 Conn. 364, 116 A. 600; Nutter v. Andrews, 246 Mass. 224, 142 N.E. 67.

Neither is it necessary to apply this simple holding to the various concrete matters in which it comes up on the record before me. It will be a simple matter for counsel to prepare and submit for settling and entry, all orders necessary, once the crucial

question of allocation has been ruled, as I here rule it.

Generally, however, the exceptions to the report of the Trustees wherein they allocate this dividend of $70,625 to the absolute estate of Sophie Franz, will be sustained, and this dividend will be allocated to the remaindermen. As said, the above ruling may be applied in all instances in the case wherein disposition of this dividend may be in question.

### The Right of the Trustees to a Commission of Five Per Cent.

The Trustees have taken credit, in their report, for a commission of five per cent. for their services. The guardian ad litem of these infants; the plaintiff, Ehrhardt W. Franz, and the Mississippi Valley Trust Company, as Missouri administrator, c.t.a., of the estates of Ernst H. Franz, deceased, and Walter G. Franz, deceased, have filed exceptions to this charge or credit, on behalf of their respective interests, upon the ground that, since they represent the interests of remaindermen, and since remaindermen are not liable to burdens put upon their remainder interests by the life tenant, this charge is unwarranted in law.

As I read the brief of counsel for the Trustees, they concede the bare bones of the law to be according to the contentions of the exceptors; but the Trustees rely upon a species of estoppel, partly resting in former recognition of the trust and partly upon the request of practically all of the beneficiaries and legatees in the estates, under the wills of the two above-named decedents.

I find nothing, I recall nothing, and nothing has been pointed out in the record sufficient to constitute estoppel of plaintiff, or of the administrator's decedents in their life times. But it is further contended that, since all of the legatees who are sui juris, being all but a negligible few of the devisees, legatees and beneficiaries under the wills of Walter G. and Ernst H. Franz, deceased, have formally, by motions, asked for an allowance of five per cent. to the Trustees, these exceptions should be overruled as to the Mississippi Valley Trust Company. The record bears out this contention of fact as made by the Trustees.

Except plaintiff and such of the devisees and heirs of deceased remaindermen as are yet infants, all of the remaindermen have formally, of record, asked that the Trustees be allowed five per cent. as commission for their services. That such a formal request binds all who have made it, if they are sui juris, and if they are in a position to speak, is fundamental. Moreover, the matter happens to come up here on exceptions to the report of the Trustees, who allowed themselves five per cent. and took credit therefor. Of course, a failure to except would be deemed in law as acquiescence. So, not only have 6⅔ of the remainder interests failed to except to the report of the Trustees in the matter of taking credit for this commission, but all of them who are sui juris, except plaintiff alone, have asked formally that such an allowance of commission be affirmatively made to the trustees by an order of this Court.

This, of course, does not bind the plaintiff. He has filed exceptions and he has not requested that an allowance be made to the Trustees out of the corpus of the remainder estate. The same is true as to the infants and the two estates represented herein by the Mississippi Valley Trust Company, as Administrator, c.t.a. The infants could not bind themselves and they except by their guardian ad litem.

I am of opinion that those of the beneficiaries, legatees and devisees who have formally asked that an allowance of five per cent. commission be made to the Trustees, are not in a position to bind the estate in which such persons are devisees, and so forth. These estates are represented here by the Mississippi Valley Trust Company, as Administrator, c.t.a. This administrator has excepted to the taking of this commission by the Trustees. I think the estates are to be concluded here by the attitude of the administrator, and not by what the ultimate beneficiaries of the estate shall do, or have done.

It follows that the exceptions of the plaintiff, of the Mississippi Valley Trust Company, as Administrator, c.t.a., of the estates of Walter and Ernst Franz, and the exceptions of the guardian ad litem, should be sustained, and no commission al-

lowed to the Trustees in the 3⅓ interests herein excepting.

The Trustees will, I assume, of course be allowed as Trustees five per cent. of the money in the life estate of Sophie Franz, but that question is for another court, in my opinion.

■ The exceptors, as well as those who have not excepted, perhaps, take under the will cum onere. But the matter of the allowance last above, is not, in my opinion, before me. It is a matter to be ruled by the Probate Court of the City of St. Louis, as is the entire matter of the estate of Sophie Franz. As I view it, no power inheres in this Court as to the absolute estate of Sophie Franz, deceased. If it got into this Court indirectly and adventitiously, it has no place here and this Court has no power over it, save, it may be, to order the Trustees to turn it over to the executor, merely so as to clear the record here. But the executor takes by the will of Sophie Franz, and in no wise under any order of this Court.

The Trustees may take credit, however, for five per cent. as a commission on the remainder of the estate, that is, on the 6⅔ interests, which, among others already discussed and disposed of, have requested that this allowance be made.

### Exceptions as to Credit for an Attorney's Fee in Favor of Former Senator Reed, and Others, for Resisting Removal of Trustees.

■ These exceptions will be sustained and the Trustees will eliminate this charge against the trust estate, as to the remainder interests.

While there are cases to be found wherein suits of a somewhat similar kind were brought against the trustees, and the latter were allowed to charge up against the estate money laid out in counsel fees for resisting removal, I am at a loss to understand the legal theory of such decisions; especially if the doctrine is sought to be applied to a situation similar to that shown by the record before me, in this case. Certainly it would ordinarily make but little difference to the trust estate whether A or B were trustee. Honesty and ability must be presumed to exist until the contrary appear. In short, if these Trustees had been removed, others would have been appointed in their stead. Such others (so runs the presumption) would have been as able and honest as were those who were removed, and so the trust estate would not, and theoretically could not, at all suffer hurt; and so, in my opinion, the trust estate ought not to be charged with fees of counsel for the Trustees, whose sole services were rendered in preventing the Trustees' removal on charges against them.

On the other hand, the matter of removal vel non was of vital importance to the Trustees personally. Disregarding, for a moment, the personal affliction which removal for cause might well have engendered, there might have resulted a total destruction of the right of the Trustees to ask for and collect any commission whatever for services rendered to the estate, or any part of it.

So, at least it is poetic justice to allow to Senator Reed and his associates, as an attorney's fee, the sum of $14,000, to be paid, however, out of the five per cent. commission of the Trustees, hereinabove allowed. Whether they may collect any other sum, from the estate of Sophie Franz, will be ruled by another court.

### Exceptions to Allowance of Credit to Trustees for Fees of Their Attorneys in This Litigation.

As I read the record on these exceptions (made by plaintiff, by the Mississippi Valley Trust Company, as Administrator, c.t.a., and by the guardian ad litem) they are bottomed, first, on the broad ground that no sum whatever should be charged against the trust estate for fees paid to counsel in any of the litigation in this case, and, second, on the ground that the sum for which credit is taken in the Trustees' report, to wit, the sum of $210,000, is exorbitant.

The first ground of exception will be overruled, and the last sustained, but there will be allowed to counsel as fees, and credit may be taken for, the sum of $115,000.

I am fully advised of the great amount of labor which fell on counsel for the Trustees in the more than eight years this

case had already been in court. I have taken into account the months and years and days and, therefore, the elapsed time actually spent by counsel in defending the main action and its manifold incidental and ancillary actions, writs of error, writs of certiorari and appeals, as well as the sum received on account, and a proportional part of the annual retainer paid for some ten years.

When compared to the emolument of the judiciary, which latter did some work on all of the above matters and things, while contemporaneously confronted, and a little vexed, by some fifty-five hundred other cases, the amount seems to me to be fair and just.

I shall not go into the cases, or far into principles of the law as to the reasons for making the allowance against the trust estate, or so much of the latter as this Court may have power to bind. If so it be that the Probate Court of the City of St. Louis may order a further allowance on behalf of the life estate of Sophie Franz, the matter is one for the Probate Court. I express no opinion, have no predilection, and suffer from neither bias nor prejudice in the latter matter.

■ The general rule is well-settled, however, that trustees are to be allowed attorney's fees made necessary in defending and prosecuting actions against, and by, them, which affect the trust estate held by them. Specious reasons may possibly be always found (some are urged here with ability and plausibility) why, in a particular case, the trustees should personally dig down into their own pockets and pay such fees from their own purses.

The rule contended for by exceptors, would have been just as much the rule had the Trustees been removed. A matter, or many matters, of public policy are involved in the question. Most of these are obvious, and I shall take up but little time or space in setting them out.

On cursory examination, there may appear to be a modicum of inconsistency in sustaining exceptions of plaintiff, the Mississippi Valley Trust Company, and the guardian ad litem, to the allowance of a commission of five per cent. to the Trustees, and at the same time overruling exceptions to the allowance of an attorney's fee to the Trustees, as against the above interests. I am of opinion that the inconsistency is more apparent than real.

As forecast, there are obvious matters of public policy involved in the latter case, which are not present in the former. To mention but one (and there are others): A trustee owes a duty to every conflicting interest, to preserve and safeguard the trust property, equally and for all. Clearly, he will not, and cannot, do this if, upon every attack upon his trust, his attitude is to be mellowed by the fear of personal loss by way of attorney's fees, if he yield to demands, whether just or unjust, rather than resort to litigation to protect the trust.

This action was not brought by, but against the Trustees. True, it has been said that their denial of plaintiff's interest provoked it. This is not unusual. I have referred already to the controlling question in the main action, that is, whether stock dividends were income or corpus. The Trustees owed a duty to the potential creditors of the personal estate of Sophie Franz. True, it happened, so far as I know, or the records show, that these were negligible. (There is, in fact, nothing in the record upon this point.) But such creditors might have been numerous. If they had been numerous, a duty which the Trustees were bound to observe, was owed to them. I am not able to see why a well-settled general rule ought to be whittled away to subserve the exigencies of an abnormal situation. It surely cannot be the law that if the trustees win in litigation against a trust estate, they may have attorney's fees allowed to them, but if they lose, they must pay such fees from their own pockets. Such a rule would be utterly destructive of a public policy, undoubtedly existing.

■ The estate in dispute was either put into the hands of the trustees, or it was not. If it was, and litigation arose about it (and both of the above propositions are verities) then I think the Trustees were authorized to hire and pay attorneys to defend its integrity, even though the legal burden was initially on the life

tenant to handle, invest and protect and conserve the remainder estate.

I pass over as arguments ad hominem, having no place here, the fact that through the years, the exceptors, or their predecessors, gladly took out of the corpus, at the hands of these Trustees, many thousands of dollars in advancements out of their remainder interests.

So, it seems to me that right and justice, law and equity, all concur in requiring that the Trustees hire and pay attorneys at the expense of the corpus of the trust estate.

### The Life Estate of Sophie Franz and Exceptions Touching the Above Estate.

Some exceptions of plaintiff, Ehrhardt W. Franz, have to do with dealings of the Trustees with money and property belonging absolutely to Sophie Franz in her lifetime. I have already indicated my views as to this life estate. Such exceptions as are bottomed upon alleged losses accruing to the life estate of Sophie Franz, or to the absolute property of the life tenant, will be dismissed without prejudice and for lack of jurisdiction in this Court to entertain such exceptions.

 Some corporate stock was bought by the Trustees, which up to now has earned no dividends in either cash or stock. I am not sure from the record whether this stock was bought for the trust estate, or estate of the remaindermen, and out of money and property of the latter, or whether it was bought with the money of Sophie Franz.

In the view I take of this exception and of the alleged proof brought forward to sustain it, it is immaterial whose money was used to acquire this stock. If it was the money of Sophie Franz, I have already expressed my views on it. If it was bought with the money of the remaindermen, there was yet no showing of fraud or negligence on the part of the Trustees. The latter may have made a bad investment, but, absent fraud and negligence, I do not think that, in effect, an action lies in favor of plaintiff against them.

Conceding, arguendo, that the possession of the Trustee was the possession of the life tenant, could the estate of the latter have been made to respond, under the terms of the will of the ancestor, because the life tenant had made an investment in something which produced no dividends, but which involved no loss except paper losses, on the basis of an unregistered stock? I do not think so, and, hence, overrule this exception of plaintiff.

### Exception of Plaintiff to a Credit of $45,000 Taken by the Trustees in Stock Rights.

 Plaintiff alone excepts to the Trustees having taken as a commission, some dozen years ago, or more, six hundred so-called stock rights, of the value, when taken, of $45,000. These rights seemingly were regarded by all parties as property of the life tenant, when they were taken, a fact, by the way, which might well soften and blunt much violent expletive and characterization in some of the briefs.

In the course of this case's long and repeated journeys through the courts, the Court of Appeals seems to have held that these six hundred stock rights belonged to the remainder estate, and not to the estate of the life tenant. Hence, plaintiff desires to have the Trustees surcharged in their report for his one-tenth remainder interest in this $45,000.

Plaintiff concedes and the record shows, that he signed a stipulation wherein he, and all others of the remaindermen, agreed that the Trustees should take the six hundred stock rights as a commission. He now contends that he signed this stipulation in the belief, as a matter of law, that the stock rights were the absolute property of the life tenant, and so, having signed under a mistake of law as to the ownership of these rights, he may now surcharge the Trustees with his interest therein. Obviously, plaintiff did an unnecessary, futile and useless thing in signing a stipulation whereby the life tenant could give away property in which plaintiff then had no interest, and which the life tenant, as was then believed, owned absolutely. I repeat, if plaintiff signed the stipulation believing, as a matter of law, that he was helping his mother give away some of her absolute property, he did a wholly unnecessary act.

But it makes no difference in the situation whether plaintiff believed, when he signed this stipulation, that the six hundred rights were the property of the life tenant, or that they were the property of the remaindermen. It was, in any case, a mistake as to the law, and not a mistake as to any fact, and, of course, he may not have relief if the mistake were one of law. His action in doing a thing which was vain and useless, belies his present assumption even, of a mistake of law. But be this as may be, there is not sufficient evidence in the whole record to set aside plaintiff's stipulation. Until that is set aside, he may not urge this exception, which, therefore, will be overruled.

### Exception as to Sale of Stock in Third National Bank and in the German Savings Institution.

This exception, by plaintiff alone, seeks to surcharge the Trustees with profits made by the tenant for life, before the Trustees were appointed.

Prior to the thirtieth day of January, 1909 (the date of the appointment of these Trustees), the life tenant had, it is said, bought bank stock in the two banks above mentioned, which she afterwards sold at a profit of some $19,000.

It is said by Trustee Buder (and nowhere denied), that the above sale was consented to by plaintiff. So, what is said above applies also to this exception. Moreover, these Trustees had nothing to do with this transaction in bank stock. It was wholly handled by the life tenant. If there is liability against her estate and in favor of plaintiff, he may pursue the matter in the State Probate Court.

### Exception overruled.

I think I have now considered all of the exceptions, not only of plaintiff, but of all other of the parties filing exceptions. If I have not, then the balance left unconsidered is of such little moment and importance as not to merit consideration. So, if any have been overlooked, such will be overruled.

### Intervention of the State of Missouri.

Therefore, I come now to the claim of the State of Missouri. This claim is bottomed upon the assumptions, (a) that no decree has ever been entered in this case specifically adjudging that what I have called, for brevity and convenience, the 6-⅔ interests as remaindermen, are in fact remaindermen; (b) that these 6-⅔ interests, being represented by persons sui juris, appeared and denied in their answers to the main action herein, that they were remaindermen, and (c) that these interests and those now claiming them are now, for the single reason last mentioned, estopped to assert that they are remaindermen, against any claim of the State of Missouri for transfer or inheritance taxes, which the State of Missouri purposes to set up, for that, as it is alleged, said 6-⅔ interests take by will from Sophie Franz and not as remaindermen under the will of Ehrhardt D. Franz, the ancestor.

In other words, the State of Missouri, intervening here for its own alleged interest, long after judgment, asserts a lien for inheritance taxes, because in the answers in the original or main action, the 6-⅔ interests each set up that they had no remainder interests left in the estate of Ehrhardt D. Franz. As forecast, when such answers were made, the State of Missouri was not a party to the litigation. Indeed, intervening only after judgment, and then only pro interesse suo, it is not yet and cannot be a party to the main action.

Upon these answers, as forecast, the State of Missouri bottoms estoppel against these interests, to set up now the well-known truth that they are in fact remaindermen, who take as such, and not by will; (save, of course, as to the absolute estate of Sophie Franz, which they do take by will, but with which, as already said, this Court deems it has nothing to do).

In the view I am constrained to take of this intervention by the State of Missouri pro interesse suo, I need not consider whether the State, a stranger to this litigation, certainly, in the sense in which the word "stranger" is found in the ruled cases, First National Bank, of Lincoln, Neb., v. Duncan, 80 Kan. 196, 101 P. 992, 28 L.R.A.,N.S., 327, 18 Ann.Cas. 78, and cases cited in note, may set up estoppel, nor whether the State has brought itself or can possibly bring itself, within the pur-

view of the well-settled doctrine of estoppel (Fargason Co. v. Furst, 8 Cir., 287 F. 306; Williams v. Neely, 8 Cir., 134 F. 1, 69 L.R.A. 232; 10 R.C.L. 689). This, for the reason that the intervention of the State of Missouri vitally affects, or may affect, the estate of Sophie Franz, administration whereof under a will, which is before me, is now being had in the Probate Court of the City of St. Louis. For, if so it be that the 6-⅔ interests take by will of Sophie Franz, and not as remaindermen under the will of Ehrhardt D. Franz, then the estate of Sophie Franz will be largely augmented to the benefit, it might be, of creditors of the latter estate. At any rate, whatever the view taken as to the legal source of the 6-⅔ interests, the estate of Sophie Franz must inevitably be vitally affected, and is entitled to its day in Court. This estate is not, and has never been, in this Court, which enjoys, ordinarily, no probate jurisdiction, neither is the executor, who is the legal representative of the estate of Sophie Franz, a party to this suit.

So, this Court, however regrettable its inability to fully dispose of this matter may be, cannot proceed upon the point, absent necessary parties. I am not saying that it might or could proceed in a matter so nearly analogous to an exercise of probate jurisdiction, even if the estate of Sophie Franz were a party to this action. I am only saying that to me it is plain that I cannot finally pass on the contention of the intervenor when necessary parties are not in Court.

Hence, it follows that the Trustees will pay over and distribute in block to the duly appointed, qualified and acting executor of the estate of Sophie Franz, all and singular such money and property as represents 6-⅔ interests in the remainder trust estate, after the payments of the charges, fees and expenses herein provided for have been made, and a receipt from the executor of the estate of Sophie Franz to the Trustees shall constitute the acquittance of the Trustees in this Court. I assume that such interests as the parties to this action shall be entitled to take from the estates of Ernst H. and Walter G. Franz, deceased, will be cared for in the administration of the above estates, respectively.

So, it follows that orders of distribution as prayed by petitions filed herein should now be made, which is accordingly ordered as follows:

One-tenth of the net estate in remainder to plaintiff Ehrhardt W. Franz, less the $40,000 ordered paid into Court; one-tenth of said estate to the Mississippi Valley Trust Company as Administrator, c. t. a., of the estate of Ernst H. Franz, deceased; one-tenth of said estate to the Mississippi Valley Trust Company as Administrator, c. t. a., of the estate of Walter G. Franz, deceased; one-third of one-tenth of said estate to the curators of the infants for whom Earl F. Nelson was guardian ad litem, as of the date of the decree herein; and 6-⅔ tenths of said estate to G. A. Buder, Sr., as executor under the will of Sophie Franz, deceased, all subject to the charges and deductions heretofore, or hereby (in orders made pursuant to these views) made in this case. Costs in the main case to be paid personally by the Trustees.

Orders, in accord with these views, may be presented for entry accordingly.